| | |
|---|---|
| **FLITTER MILZ, P.C.** | ATTORNEYS FOR PLAINTIFF |
| CARY L. FLITTER | RAJA SHOUKAT |
| ANDREW M. MILZ | |
| JODY T. LÓPEZ-JACOBS | |
| 1814 East Route 70, Suite 350 | |
| Cherry Hill, NJ 08003 | |
| (856) 396-0600 | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RAJA SHOUKAT, <br><br> Plaintiff, <br><br> vs. <br><br> GOODLEAP, LLC, <br><br> TITAN SOLAR POWER NJ, LLC, <br><br> Defendants. | CIVIL ACTION NO. <br><br> **COMPLAINT** |

## I. INTRODUCTION

1. This is a consumer protection action for damages pursuant to New Jersey's Consumer Fraud Act ("CFA"), the federal Truth in Lending Act ("TILA"), and other laws.

2. Plaintiff was offered and agreed to financing terms for the purchase and installation of solar panels on his roof. The proposal was to pay $25,000 over 25 years.

3. Defendants, however, changed the terms on Mr. Shoukat. They did so by forging Mr. Shoukat's signatures on several contracts that it hid from him, including a solar power purchase agreement ("PPA") with Titan Solar loan contract with GoodLeap, LLC requiring the payment of $142,948.38 over the span of 25 years—more than five times what was proposed.

4. Although the CFA requires that Defendants provide the consumer a copy of the consumer's contract at the time of signing, and the right to cancel, Defendants did not provide Mr. Shoukat copies of the forged contracts at the time they were purportedly signed. Instead,

Mr. Shoukat received a copy of the forged contracts only *after* a solar panel system was installed on his house.

5. Defendants accomplished this fraud by altering Mr. Shoukat's email address, ensuring he would not be sent a copy of the contracts.

6. Plaintiff accordingly brings this action for damages, rescission, and other relief.

## II. JURISDICTION

7. Jurisdiction arises under 28 U.S.C. § 1331 because this Court has original jurisdiction over the federal TILA claim.

8. Jurisdiction over the state law claims arises under 28 U.S.C. § 1367(a).

9. Venue is proper because the offending conduct took place in this district.

## III. PARTIES

10. Plaintiff Raja Shoukat is an adult and consumer who resides in Piscataway, NJ.

11. Mr. Shoukat's native language is Punjabi, and his English-speaking abilities are limited.

12. Defendant Titan Solar Power NJ, LLC ("Titan") is a limited liability company with a principal place of business at 525 W. Baseline Rd, Mesa, AZ 85210, and a registered office at Five Greentree Centre, 525 Route 73 North Ste 104, Marlton, NJ, with the registered agent Northwest Registered Agent, LLC.

13. Titan is in the business of marketing, selling, leasing, designing, constructing, installing, and servicing photovoltaic and/or solar energy systems on residential properties.

14. Defendant GoodLeap, LLC ("GoodLeap") is a limited liability company with a principal place of business at 8781 Sierra College Blvd., Roseville, CA 95661.

15. GoodLeap is a financing company that partners with installers and sales companies like Titan and Skyline to provide financing for solar panels and other solar products.

16. GoodLeap is a paperless company, meaning that it does not provide its customers paper copies of contracts at the time of signing. Instead, GoodLeap forces the customer to receive documents electronically through email.

17. GoodLeap relies on sales agents acting on its behalf to obtain accurate information about and from the customer during the sale process.

18. As a matter of policy, GoodLeap may originate a loan with a customer without first speaking with that customer.

19. At all times relevant, Defendants acted on behalf of and for the benefit of the other Defendants, and could not complete the transaction without the involvement of the other Defendants.

20. Defendants have ratified, approved of, and assumed responsibility for the conduct of the other Defendants and their agents.

### IV. STATEMENT OF CLAIM

21. In or about November 2022, Mr. Shoukat was visited by a solar sales agent named Noman Imtiaz regarding the purchase of solar panels to be installed on his home in Piscataway, NJ.

22. Throughout the entire interaction between the sales agent and Mr. Shoukat, they spoke almost exclusively in Mr. Shoukat's native language, Punjabi.

23. The sales agent told Mr. Shoukat that with the solar panels installed on his house, his monthly electricity bill would go down from its normal range of $100–$150 to $25.

24. The sales agent told Mr. Shoukat that the potential transaction would be a 25-year loan for $25,000, which Mr. Shoukat believed to be a good deal.

25. The sales agent told Mr. Shoukat that the loan would be paid for by state and federal incentives, and that such payments would be issued to Mr. Shoukat twice per month.

26. Throughout the sale, the sales agent was using his computer, entering in Mr. Shoukat's information such as his social security number, and eventually using it to perform a credit check.

27. The sales agent also used Mr. Shoukat's iPhone for five to ten minutes.

28. The sales agent said he would keep Mr. Shoukat updated, and that the next step would be an inspection.

29. No GoodLeap or Titan paperwork—written or electronic—was provided to Mr. Shoukat at or around the time of the interaction.

30. There was no mention of the need for a $70,000 loan to finance the cost of purchasing and installing the solar panel system. The highest loan amount quoted was $25,000.

31. At the sales agent's request, Mr. Shoukat provided his email address.

32. When Mr. Shoukat asked the sales agent for paperwork, the sales agent said he would email the paperwork whenever it is done.

33. Later, Mr. Shoukat continued to ask for paperwork including any contract, and the sales agent replied that he would drop it off, but he never did.

34. A solar panel system was eventually installed on Mr. Shoukat's home.

35. After the installation, Mr. Shoukat noticed that about $300 was debited from his account by a company he did not recognize, called Mosaic.

36. Mr. Shoukat called the sales agent, who told him not to worry about it, and said he would reimburse Mr. Shoukat. The sales agent also explained that he cancelled the contract.

37. Nonetheless, Mr. Shoukat was billed a second time by Mosaic.

38. Mr. Shoukat's wife, Aneesa Raja, called PSE&G about an electric issue on the property. PSE&G referred her to Titan, who referred her to GoodLeap.

39. On the call with GoodLeap, the call representative told Mrs. Raja that Mr. Shoukat's account was on autopay for $343. Mrs. Raja explained that this was not what her husband agreed to.

40. Eventually, on or about August 9, 2023, GoodLeap emailed Mr. Shoukat a loan contract—incorrectly in the name of "Sufyan Shoukat" instead of Raja Shoukat—containing financing terms that were completely different than what Mr. Shoukat had agreed to.

41. The GoodLeap loan contract provides for an amount financed of $72,657.35, a finance charge of $70,291.03, and a total of payments of $142,948.38. Monthly payments started at $343.37, increasing to $487.43 after the sixteenth payment, for a period of 25 years, as depicted:

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 5.99% | $70,291.03 (e) | $72,657.35 | $142,948.38 (e) |

| Monthly Payment Schedule | | |
|---|---|---|
| Number of Payments | Amount of Payments | When Payments Are Due |
| 1 | $343.37 (e) | Monthly, beginning 3 months after the Loan Start Date (e) |
| 15 | $343.37 (e) | Monthly, beginning 4 months after the Loan Start Date (e) |
| 281 | $487.43 (e) | Monthly, beginning 19 months after the Loan Start Date (e) |
| 1 | $486.63 (e) | 300 months after the Loan Start Date (e) |

42. The GoodLeap contract was not signed by Mr. Shoukat, nor was a copy of it sent to Mr. Shoukat on or near the date set forth on the contract: December 15, 2022.

43. Indeed, the GoodLeap contract bears a false email address that is very similar to Mr. Shoukat's actual email address, except that it added one extra letter.

44. Defendants' altering of the email address ensured that Mr. Shoukat would not receive a copy of the GoodLeap loan contract on the date it was purportedly signed.

45. It is believed and averred that Defendants' altering of the email address was intentional, for the purpose of hiding the GoodLeap loan contract from Mr. Shoukat.

46. The GoodLeap loan contract also contains an arbitration clause, and sets forth a place where the customer can write their initials to agree to the arbitration clause.

47. Mr. Shoukat did not sign or agree to the arbitration clause. This arbitration clause was never shown to or provided to Mr. Shoukat, nor was he provided notice of it, at any point on or prior to the date set forth on the loan contract.

48. Mr. Shoukat's purported signatures and initials on the GoodLeap loan contract were forged and do not belong to Mr. Shoukat. Mr. Shoukat does not use the initials "SS," yet those initials appear throughout the document.

49. At some point, Mr. Shoukat became aware of the existence of two separate Titan Solar Power Purchase Agreements—both also incorrectly in the name of "Sufyan Shoukat." The first contract is dated November 17, 2022, and the second one is dated December 13, 2022.

50. The Titan contracts were not signed by Mr. Shoukat, nor were copies of them sent to Mr. Shoukat on the dates set forth on the contracts.

51. Indeed, the two contracts bear a false email address that is very similar to Mr. Shoukat's actual email address, except that it added one extra letter.

52. Defendants' altering of the email address ensured that Mr. Shoukat would not receive a copy of these two Titan contracts on the dates they were purportedly signed.

53. It is believed and averred that Defendants' altering of the email address was intentional, for the purpose of hiding the Titan contracts from Mr. Shoukat.

54. Mr. Shoukat's purported signatures and initials on the two Titan contracts were forged and do not belong to Mr. Shoukat. Mr. Shoukat does not use the initials "SS," yet those initials appear throughout the document.

55. The two Titan contracts contain very different terms—neither of which were shown to Mr. Shoukat. The earlier of the two contract documents provides a "Total System Cost" of $38,661.71, but the later of the two provides a "Total System Cost" of $72,657.35—nearly double the cost, as depicted below:

**Titan Solar PPA dated 11/17/2022**

| PAYMENT AND PRICE | |
|---|---|
| Sales Price/Watt: 3.72 | Total System Cost: 38661.71 |
| Estimated Value of Utility Incentive (if any) 0.00 | Payment Method: Cash ☐  Loan: ☒ |
| FINANCE PAYMENT:    Financier: GoodLeap | Term: 25    APR: 5.99 |

**Titan Solar PPA dated 12/13/2022**

| PAYMENT AND PRICE | |
|---|---|
| Sales Price/Watt: 6.99 | Total System Cost: 72657.35 |
| Estimated Value of Utility Incentive (if any) 0.00 | Payment Method: Cash ☐  Loan: ☒ |
| FINANCE PAYMENT:    Financier: GoodLeap | Term: 25    APR: 5.99 |

56. Mrs. Raja complained to both GoodLeap and Titan about the forged contracts, but both of them continue to deem Mr. Shoukat bound by the contracts.

*<u>Defendants Submit Forged Documents to the State of New Jersey</u>*

57. Before Mr. Shoukat and his wife learned about the existence of the forged contracts, Defendants submitted the forged Titan contract and other forged documents to the State of New Jersey for the purpose of registering with the New Jersey Clean Energy Program.

58. The submission includes a "Solar Purchase Disclosure Statement" that "is designed to help you [the purchaser] understand the terms and cost of your purchase of a solar electric system."

59. Defendants never sent or showed this Solar Purchase Disclosure Statement to Mr. Shoukat, yet it was purportedly signed by "Sufyan Shoukat" on November 17, 2022. This signature is a forgery.

60. The Solar Purchase Disclosure Statement bears an incorrect email address for Mr. Shoukat.

61. The Solar Purchase Disclosure Statement reflects the false and inaccurate purchase price of $38,661.71.

62. The submission to the State of New Jersey also includes an "ADI Registration Certification Form" purportedly signed by "Sufyan Shoukat" on November 17, 2022. This signature is a forgery.

63. The ADI Registration Certification Form bears an incorrect email address for Mr. Shoukat.

64. The submission to the State of New Jersey also includes a "Final As-Built Technical Worksheet" purportedly signed by "Sufyan Shoukat" on November 17, 2022. This signature is a forgery.

65. Defendants knew or should have known that Mr. Shoukat's signatures on these submissions were not his.

66. Defendants did not disclose the existence of these forged documents to Plaintiff.

### *Defendants' Pattern and Practice of Fraudulent and Deceptive Conduct*

67. Defendants GoodLeap and Titan, as a pattern and practice, forge documents and engage in other fraudulent and deceptive conduct.

68. Defendant GoodLeap and Titan enable this fraudulent and deceptive conduct through their corporate processes, which include electronic tools that they provide to their sales agent, enabling their sales agents to, among other things, (a) acquire detailed information about the property owner before meeting with the property owner, (b) obtain and use the property owner's consumer report to qualify the potential customer, and (c) sign documents electronically with the tap of a button.

69. Consumers across the country have complained that GoodLeap's and Titan's sales agents have engaged in fraudulent or deceptive sales practices.

70. Some of these irate consumers have complained to organizations like the Better Business Bureau.

71. Despite ample notice of this problem, Defendants GoodLeap and Titan continued to allow and enable their sales agents to employ fraudulent or deceptive sales practices.

*Damage from Defendants' Fraudulent and Deceptive Conduct*

72. As a result of Defendants' willful, wanton, reckless, and/or negligent actions, Plaintiff has been damaged.

73. Defendants' willful, wanton, reckless, and/or negligent conduct has resulted in Plaintiff becoming obligated on contracts he never saw or signed.

74. Defendants' willful, wanton, reckless, and/or negligent conduct has resulted in Plaintiff being deemed obligated to the 25-year loan agreement with GoodLeap for financing terms that are more expensive than what he believed he was getting based on what he was told by the Defendants' sales agent.

75. Mr. Shoukat has suffered mental and emotional distress, worry, and aggravation as a result of Defendants' actions.

## COUNT I
## New Jersey Consumer Fraud Act

76. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

77. Defendants' sales and sales practices are subject to the CFA and its implementing regulations.

78. Defendants are subject to the CFA, N.J.S.A. 56:8-1 *et seq.* and its implementing regulations.

79. The CFA, at N.J.S.A. 56:8-2, prohibits the use of "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely

upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise."

80. Defendants violated the CFA by misrepresenting the terms of the transaction and knowingly concealing the contract from Plaintiff.

81. The CFA also states: "It shall be an unlawful practice for a person in connection with a sale of merchandise to require or request the consumer to sign any document as evidence or acknowledgment of the sales transaction, of the existence of the sales contract, or of the discharge by the person of any obligation to the consumer specified in or arising out of the transaction or contract, unless he shall at the same time provide the consumer with a full and accurate copy of the document so presented for signature but this section shall not be applicable to orders placed through the mail by the consumer for merchandise." N.J.S.A. 56:8-2.22.

82. Defendants violated the CFA by failing to provide copies of the forged GoodLeap and Titan contracts to Mr. Shoukat at the time they were purportedly signed.

83. The CFA's regulations prohibit sellers and home improvement contractors from "[k]nowingly fail[ing] to make any material statement of fact, qualification or explanation if the omission of such statement, qualification or explanation causes an advertisement, announcement, statement or representation to be false, deceptive or misleading." N.J.A.C. § 13:45A-16.2(a)(9)(ii).

84. The CFA's regulations also require that "[a]ll home improvement contracts for a purchase price in excess of $ 500.00, and all changes in the terms and conditions thereof shall be in writing," and "signed by all parties[.]" N.J.A.C. § 13:45A-16.2(a)(12).

85. The Contractors' Registration Act likewise requires that "every home improvement contract for a purchase price in excess of $500, and all changes in the terms and

11

conditions of the contract, shall be in writing" and "signed by all parties[.]" N.J.S.A. 56:8-151(a).

86.     The Contractors' Registration Act provides "that a home improvement contract may be cancelled by a consumer for any reason at any time before midnight of the third business day after the consumer receives a copy of it." N.J.S.A. § 56:8-151(b).

87.     Defendant Titan is a licensed as a home improvement contractor with the State of New Jersey.

88.     Defendants Titan's conduct stated herein violates the CFA and its implementing regulations, including those pertaining to home improvement practices.

89.     As a result of Defendants' violations of the Consumer Fraud Act and its implementing regulations, Mr. Shoukat has suffered ascertainable losses, which include the purported contractual obligation under the GoodLeap loan contract and the Titan contracts and the more expensive financing terms thereunder, and the costs associated with removing the solar panels from the roof of the house (including any necessary repairs).

**WHEREFORE**, Plaintiff demands judgment against Defendants for:

    a. Actual damages;

    b. Treble damages under the Consumer Fraud Act at N.J.S.A.56:8-19;

    c. Declaratory judgment that the contracts involved herein are void, canceled, and unenforceable;

    d. Equitable relief requiring Defendants to remove the solar panels and repair any damage to the Nutley, NJ residence;

    e. Reasonable attorneys' fees and costs under the CFA at N.J.S.A.56:8-19 and all other applicable statutes;

  f. Interest; and

  g. Any other relief the Court deems just and proper.

## COUNT II
### Identity Theft/Forgery

90. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

91. Defendants, with the purpose to defraud, or with knowledge that it was facilitating a fraud, forged, and used Plaintiff's signatures and initials on the GoodLeap and Titan contracts (and the GoodLeap arbitration provision) without his authorization or consent.

92. The conduct of Defendants violates N.J.S.A. § 2C:21-17.4 (incorporating N.J.S.A. §§ 2C:21-1, 2C:21-17).

93. As a result of Defendants' conduct, Plaintiff suffered ascertainable losses, which include the purported contractual obligations and the more expensive financing terms thereunder, and the costs associated with removing the solar panels from the roof of the house (including any necessary repairs).

 WHEREFORE, Plaintiff demands judgment against Defendants for:

 (a) Damages, N.J.S.A. § 2C:21-17.4(a);

 (b) Treble damages, N.J.S.A. § 2C:21-17.4(a);

 (c) Declaratory judgment that the contracts involved herein are void, canceled, and unenforceable;

 (d) Equitable relief requiring Defendants to remove the solar panels and repair any damage to the Nutley, NJ residence;

 (e) Reasonable attorneys' fees and costs;

(f)     Interest; and,

(g)     Any other relief the Court deems just and proper. N.J.S.A. § 2C:21-17.4(a).

## COUNT III
### Fraudulent Concealment/Nondisclosure

94.     Plaintiff repeats the allegations contained above as if the same were here set forth at length.

95.     Defendants had a legal obligation to disclose the forged GoodLeap and Titan contracts to Plaintiff, which included many material terms and conditions such as the more expensive financing terms.

96.     Defendants intentionally concealed and did not disclose the forged GoodLeap and Titan contracts to Plaintiff until after the solar panels were installed on his home.

97.     As a result of Defendants' intentional concealment and nondisclosure, Plaintiff suffered emotional distress, worry, aggravation, and stress, and Defendants continue to claim that Plaintiff is obligated under the contracts.

98.     Defendants' concealment and nondisclosure was willful, malicious, wanton, intentional, and reckless.

WHEREFORE, Plaintiff demands judgment against Defendants for:

(a)     Actual damages;

(b)     Punitive damages;

(c)     Declaratory judgment that the contract involved herein is void, canceled, and unenforceable;

(d)     Equitable relief requiring Defendants to remove the solar panels and repair any damage to Plaintiff's property;

(e) Interest; and

(f) Any other relief the Court deems just and proper.

## COUNT IV
## Truth in Lending Act
## (against GoodLeap)

99. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

100. The stated purpose of the Truth in Lending Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).

101. The Act mandates that lenders disclose certain costs of credit associated with the transaction. 15 U.S.C. § 1631(a) ("a creditor or lessor shall disclose to the person who is obligated on a consumer lease or a consumer credit transaction the information required under this subchapter").

102. Terms such as "amount financed," "finance charge," "total of payments," and "annual percentage rate" must be used, as well as a "descriptive explanation" of each of these terms. 15 U.S.C. §1638(a)(2)–(5); Reg. Z, §1026.18(b), (d)–(e), (h).

103. The Act mandates that these disclosures be written "clearly and conspicuously," and that "[t]he terms 'annual percentage rate' and 'finance charge' shall be disclosed more conspicuously." 15 U.S.C. §1632(a); Reg. Z, §1026.17(a).

104. The Act also requires the disclosure of "[t]he number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. §1638(a)(6).

105.     "The creditor shall make disclosures before consummation of the transaction." Reg. Z, §1026.17(b).

106.     GoodLeap did not comply with the requirements of the TILA.

107.     GoodLeap did not provide Mr. Shoukat disclosures of the "amount financed," "finance charge," and "annual percentage rate," nor any other disclosures, as GoodLeap did not provide Mr. Shoukat the loan contract or any related disclosures contemporaneously with or prior to the loan transaction.

108.     GoodLeap violated the Truth in Lending Act, 15 U.S.C. §§ 1632(a), 1638(a)(2)–(6), and Reg. Z, §§ 1026.17–1026.18.

109.     Mr. Shoukat detrimentally relied on GoodLeap's failure to provide the above disclosures, because had these disclosures been provided to him, he would not have orally agreed to the installation of solar panels on his home.

110.     As a result of GoodLeap's failure to provide the above disclosures, Mr. Shoukat suffered damages including the purported loan obligation, as GoodLeap continues to consider Mr. Shoukat to be obligated under the loan.

**WHEREFORE**, Plaintiff demands judgment against Defendant GoodLeap for:

  a. Actual damages;
  b. Statutory damages;
  c. Reasonable attorneys' fees and costs; and,
  d. Such other relief as the Court shall deem just and proper.

## V. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

## VI. CERTIFICATION PURSUANT TO N.J.S.A. 56-8:20

The undersigned hereby certifies that a copy of the Complaint was sent via first class United States Mail, postage prepaid, to:

Office of the Attorney General
P.O. Box 112
Trenton, NJ 08625-0112

Respectfully submitted:

Date: November 22, 2023

*/s/ Andrew M. Milz*
CARY L. FLITTER
ANDREW M. MILZ
JODY T. LÓPEZ-JACOBS
**FLITTER MILZ, P.C.**
1814 East Route 70, Suite 350
Cherry Hill, NJ 08003
(856) 396-0600

*Attorneys for Plaintiff*